# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| CAROL A. MUTTER, ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 1:05cv00114 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| ) | |
| ) | |
| LINDA S. MCMAHON,[1] ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | By: PAMELA MEADE SARGENT |
| Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Carol A. Mutter, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

---

[1]On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

-1-

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987.) Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966.) "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642.)

The record shows that Mutter filed her first application for DIB on January 9, 1998, alleging that she became disabled on May 30, 1997, due to a panic disorder, depression and anxiety. (Record, ("R."), at 63-65, 73.) This claim was denied at the initial and reconsideration levels, and she requested a hearing. (R. at 53-55, 56, 58-59, 61.) On November 24, 1998, an administrative law judge, ("ALJ"), issued a decision finding that Mutter did not have a severe impairment. (R. at 187-91.) Mutter filed a request for review of the ALJ's decision, (R. at 209), which was denied, (R. at 211-13), and Mutter did not further pursue this application.

Mutter filed a second DIB application on July 14, 2001, alleging that she became disabled on May 30, 1997, due to a panic disorder, depression and anxiety. (R. at 226-28, 234.) This claim was denied at the initial and reconsideration levels, and she requested a hearing. (R. at 198-200, 203, 206-07, 208.) A hearing was held on May 13, 2002, at which Mutter was represented by counsel. (R. at 486-98.) By decision

-2-

dated July 26, 2002, the ALJ denied Mutter's claim. (R. at 38-42.) Mutter filed a request for review of the ALJ's decision, (R. at 33), and the Appeals Council vacated the ALJ's decision and remanded her case to the ALJ for further consideration. (R. at 214-17.) The ALJ held a supplemental hearing on April 8, 2004, at which Mutter was represented by counsel. (R. at 499-526.)

By decision dated April 30, 2004, the ALJ denied Mutter's claim. (R. at 20-27.) The ALJ found that Mutter met the nondisability insured status requirements of the Act for DIB purposes through the date of his decision. (R. at 27.) He further found that Mutter had not engaged in substantial gainful activity since May 30, 1997. (R. at 27.) The ALJ found that the medical evidence established that Mutter did not have a severe physical or mental impairment. (R. at 27.) Thus, the ALJ found that Mutter was not under a disability as defined by the Act and was not eligible for benefits at any time through the date of his decision. (R. at 27.) *See* 20 C.F.R. § 404.1520(c) (2006).

After the ALJ issued his opinion, Mutter pursued her administrative appeals, (R. at 16), but the Appeals Council denied her request for review. (R. at 10-13.) Mutter then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006.) The case is before this court on Mutter's motion for summary judgment filed May 25, 2006, and the Commissioner's motion for summary judgment filed August 3, 2006.

## II. Facts

Mutter was born in 1955, (R. at 63, 226), which at the time of the ALJ's decision

classified her as a "younger person" under 20 C.F.R. § 404.1563(c) (2006). Mutter obtained her general equivalency development, ("GED"), diploma, and has past relevant work experience as a customer service representative and food nutrition assistant. (R. at 121, 235, 255, 502.) Mutter testified at her 2002 hearing that her medication helped control her nerves. (R. at 493.) She stated that her panic attacks were not as severe since taking medication. (R. at 494.)

Thomas Schacht, a medical expert, testified at Mutter's 2004 hearing. (R. at 515-25.) Schacht testified that he could not find a basis in Dr. Thompson's notes to support the impairment ratings that she indicated on the mental assessment. (R. at 517.) He also testified that he did not find a basis in Hughson's report to support the impairment ratings that she indicated on the mental assessment. (R. at 518.) Schacht testified that Mutter's IQ score of 67 was not consistent with her prior work history as a customer service representative nor for someone who received a GED. (R. at 521.)

In rendering his decision, the ALJ reviewed records from Johnston Memorial Hospital; Dr. William J. Baker, M.D.; Dr. Linda R. Thompson, M.D.; Family Healthcare Associates of SWVA, P.C.; Dr. Deborah Weddington, M.D.; Joseph Leizer, Ph.D., a state agency psychologist; CVS Pharmacy; Wal-Mart Pharmacy; Northgate Pharmacy; Abingdon Family Health Care; Julie Jennings, Ph.D., a state agency psychologist; Dr. Jeff McConnell, M.D.; Dr. Gary Parrish, M.D., a state agency physician; Dr. Neal A. Jewell, M.D.; Sharon J. Hughson, Ph.D., a clinical psychologist; Washington County School Board; and William N. Neff Vocational Center. Mutter's attorney also submitted medical records from Dr. Ashvin Patel, M.D.; Dr. Bruce Higinbothom, M.D.; Dr. Jewell; Wal-Mart Pharmacy; and Northgate Pharmacy to the

-4-

Appeals Council.[2]

On February 11, 1995, Mutter was admitted to Johnston Memorial Hospital for spontaneous pneumothorax. (R. at 123-37, 429-41.) She was discharged on February 17, 1995, with a diagnosis of spontaneous pneumothorax and early emphysema. (R. at 123, 429.) On September 23, 1995, Mutter presented to the emergency room for complaints that her heart was "skipping beats" and shortness of breath. (R. at 443.) She was diagnosed with hypophosphatemia[3] and probable panic disorder. (R. at 443.) On October 22, 1995, Mutter presented to the emergency room for complaints of fatigue and decreased appetite. (R. at 442.) She was diagnosed with depression. (R. at 442.)

The record shows that Dr. William J. Baker, M.D., treated Mutter from September 1995 through June 1997 for complaints of panic attacks, depression, back pain and difficulty sleeping. (R. at 138-45.) On October 3, 1995, Mutter reported that she felt better. (R. at 143.) She reported that she could control her symptoms related to panic attacks. (R. at 143.) On October 23, 1995, Mutter complained of feeling weak and light headed. (R. at 141.) She reported that she experienced a panic attack and took Xanax, which improved her symptoms. (R. at 141.) On November 2, 1995,

---

[2]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 10-13), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

[3]Hypophosphatemia is an abnormally decreased amount of phosphates in the blood. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 806 (27th ed. 1988).

Mutter reported that she felt better since taking her medication. (R. at 141.) On December 30, 1996, Mutter reported experiencing one panic attack a month. (R. at 140.) She also reported depression. (R. at 140.) On January 14, 1997, Mutter reported that her medication was controlling her panic attacks. (R. at 138.) On June 12, 1997, Mutter reported that she pulled muscles in her back while doing housework. (R. at 138.) She also complained of depression and difficulty sleeping. (R. at 138.) Dr. Baker reported that there were no worrisome signs on examination for low back pain. (R. at 138.) Mutter had full range of motion, and straight leg raising tests were negative. (R. at 138.) Dr. Baker referred Mutter for psychiatric evaluation. (R. at 138.)

On June 24, 1997, Mutter saw Dr. Linda R. Thompson, M.D., upon referral from Dr. Baker. (R. at 306-09.) Mutter reported that her symptoms of depression and panic attacks had decreased with medication. (R. at 306.) Dr. Thompson reported that Mutter's memory, insight and cognitive function were intact. (R. at 308.) Dr. Thompson diagnosed major depressive disorder, single episode, severe without psychotic features, generalized anxiety disorder and panic disorder without agoraphobia. (R. at 308.) Dr. Thompson indicated that Mutter had a then-current Global Assessment of Functioning, ("GAF"), score of 55.[4] (R. at 309.) On October 8, 1997, Mutter reported that her medication was effective. (R. at 304.) She denied crying spells and irritability. (R. at 304.) She reported occasional mild panic attacks.

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-6-

(R. at 304.) Dr. Thompson assessed Mutter's then-current GAF score at 60. (R. at 305.) On March 10, 1998, Mutter reported increased panic attacks. (R. at 302.) She described her depression as mild and her anxiety as mild to moderate. (R. at 302.) On September 1, 1998, Mutter reported that her anxiety and depression were stable on medication. (R. at 300.) On February 19, 1999, Mutter reported that she was stable on her medication. (R. at 299.) On July 22, 1999, Mutter reported that she was doing fairly well. (R. at 298.) She reported occasional mild depression and mild to moderate anxiety. (R. at 298.) Dr. Thompson assessed her then-current GAF score at 50.[5] (R. at 298.) On August 23, 1999, Mutter described her depression and anxiety as mild to moderate. (R. at 297.) On October 22, 1999, Mutter reported that she was working in food services for the school system and that she was enjoying the work. (R. at 296.) She described her anxiety and depression as mild to moderate. (R. at 296.)

On August 10, 2000, Mutter complained of increased panic attacks and depression. (R. at 295.) On October 24, 2000, Mutter reported doing better since starting Paxil. (R. at 292.) On December 19, 2000, Mutter reported doing better and reported no problems with her medications. (R. at 291.) On February 19, 2001, Mutter reported that her symptoms of depression had improved. (R. at 290.) Her then-current GAF score was assessed at 55. (R. at 290.) On April 18, 2001, Mutter reported that she was doing fairly well. (R. at 289.) On July 18, 2001, Mutter reported that she had no significant symptoms since previous visit. (R. at 288.) She reported that she did not plan to return to work and that she had applied for disability. (R. at 288.) On February 11, 2002, Mutter described her depression and anxiety as moderate. (R. at 341.)

---

[5] A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

On October 23, 2001, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Mutter suffered from an affective disorder and anxiety-related disorder. (R. at 321-35.) He indicated that Mutter had mild limitations in her activities of daily living and in maintaining social functioning. (R. at 331.) He reported that Mutter had moderate limitations in her ability to maintain concentration, persistence or pace. (R. at 331.) Leizer found that Mutter had not experienced any episodes of decompensation. (R. at 331.) This assessment was affirmed by R. J. Milan Jr., Ph.D., another state agency psychologist, on January 7, 2002. (R. at 321.)

Leizer also completed a mental assessment indicating that Mutter had moderate limitations in her ability to understand, remember and carry out detailed instructions and to maintain attention and concentration. (R. at 337-40.) This assessment was affirmed by Milan on January 7, 2000. (R. at 339.)

On December 6, 2001, Mutter saw Dr. Deborah Weddington, M.D., for complaints of low back pain and depression. (R. at 317-20.) Dr. Weddington reported that her physical findings did not suggest that Mutter would be unable to perform manual labor. (R. at 318.) She reported that Mutter should receive a comprehensive psychiatric evaluation to determine her psychiatric problems. (R. at 318.)

On February 6, 2003, Julie Jennings, Ph.D., a state agency psychologist, completed a mental assessment indicating that Mutter had moderate limitations in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration and to perform activities within a schedule, maintain

-8-

regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to set realistic goals or make plans independently of others. (R. at 363-67.) Jennings reported that Mutter could perform simple, unskilled, nonstressful work. (R. at 365.) This assessment was affirmed by Joseph Leizer, Ph.D., another state agency psychologist, on June 3, 2003. (R. at 365.)

Jennings completed a PRTF indicating that Mutter suffered from an affective disorder and anxiety-related disorder. (R. at 368-81.) She indicated that Mutter was moderately limited in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 378.) Jennings found that there was insufficient evidence to determine if Mutter had experienced any episodes of decompensation. (R. at 378.)

On February 7, 2003, Dr. Jeff McConnell, M.D., examined Mutter for her complaints of low back pain. (R. at 382-84.) Dr. McConnell reported that Mutter appeared to be in no pain and that she walked with a normal gait. (R. at 382.) Heel-and-toe walking was performed without difficulty or signs of weakness. (R. at 382.) Examination of Mutter's cervical and thoracic spine was normal. (R. at 383.) Examination of Mutter's lumbar spine showed tenderness to palpation. (R. at 383.) Dr. McConnell diagnosed a degenerative intervertebral disc at the L5-S1 level and chronic episodic low back pain. (R. at 383.) No signs of nerve compression were found. (R. at 383.)

On April 2, 2003, Dr. Gary Parrish, M.D., a state agency physician, indicated that Mutter had the residual functional capacity to perform medium work.[6] (R. at 385-92.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 388-90.) This assessment was affirmed by Dr. Richard M. Surrusco, M.D., another state agency physician, on June 2, 2003. (R. at 392.)

On May 15, 2003, Dr. Neal A. Jewell, M.D., saw Mutter for her complaints of low back pain. (R. at 407-08.) Dr. Jewell reported that Mutter's gait was normal. (R. at 407.) No spasm or atrophy was noted. (R. at 407.) Straight leg raising tests were positive. (R. at 407.) Dr. Jewell recommended that Mutter continue therapy. (R. at 407.) On August 22, 2003, Mutter complained of low back pain. (R. at 421-22.) Dr. Jewell reported that Mutter had normal gait and posture. (R. at 422.) Motor and sensory examination was intact. (R. at 421.) Straight leg raising tests were positive bilaterally. (R. at 421.) Dr. Jewell reviewed an MRI of Mutter's lumbar spine performed on December 28, 2002. (R. at 421.) Dr. Jewell noted that the MRI showed degenerative changes at the L5-S1 level with a very small narrow-based central disc bulge. (R. at 421.) Dr. Jewell ordered an epidural steroid injection. (R. at 421.) On July 23, 2004, Mutter reported that her medication was helpful, as well as physical therapy. (R. at 484.) She reported minimal lower extremity pain and mild lower back pain. (R. at 484.)

On August 18, 2003, Sharon J. Hughson, Ph.D., a clinical psychologist,

---

[6]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2006).

evaluated Mutter at the request of Disability Determination Services. (R. at 413-16.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered and Mutter obtained a verbal IQ score of 72, a performance IQ score of 67 and a full-scale IQ score of 67. (R. at 415.) Hughson diagnosed dementia, not otherwise specified, and mild mental retardation. (R. at 416.)

On September 14, 2003, Hughson completed a mental assessment indicating that Mutter was not limited in her ability to relate to co-workers, to deal with the public, to interact with supervisors, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 417-19.) She indicated that Mutter had a more than satisfactory ability to follow work rules. (R. at 417.) Hughson indicated that Mutter had a satisfactory ability to maintain attention/concentration and to behave in an emotionally stable manner. (R. at 417-18.) She indicated that Mutter was seriously limited, but not precluded, in her ability to use judgment, to deal with work stresses, to function independently, to understand, remember and carry out complex and detailed instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 417-18.) Hughson also found that Mutter could not manage benefits in her own interest. (R. at 419.)

On December 15, 2003, Dr. Ashvin A. Patel, M.D., a psychiatrist, evaluated Mutter. (R. at 465.) Mutter reported that she had no major problems or complaints. (R. at 465.) She reported that her depression and anxiety had remained stable. (R. at 465.) Dr. Patel reported that Mutter was not anxious, tense, fearful or panicky. (R. at 465.) She reported no side effects from her medications. (R. at 465.) On March 10, 2004, Mutter reported that she had been under stress dealing with her brother's death

and the sickness of her other brother. (R. at 464.) On June 10, 2004, Dr. Patel reported that Mutter was anxious and frustrated but did not appear to be depressed. (R. at 463.) Dr. Patel reported that Mutter did not appear to be having any lowering in her functioning. (R. at 463.) Dr. Patel noted a diagnosis of panic disorder with agoraphobia and depressive disorder, not otherwise specified. (R. at 463.)

On November 17, 2004, Dr. Patel completed a mental assessment indicating that Mutter had a limited, but satisfactory ability to maintain personal appearance. (R. at 458-60.) Dr. Patel indicated that Mutter had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to deal with the public, to interact with supervisors, to deal with work stresses, to understand, remember and carry out simple job instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 458-59.) Dr. Patel indicated that Mutter had a seriously limited, but not precluded, to no useful ability to use judgment. (R. at 458.) Dr. Patel also indicated that Mutter had no useful ability to deal with work stresses, to function independently, to maintain attention and concentration and to understand, remember and carry out complex and detailed job instructions. (R. at 458-59.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated April 30, 2004, the ALJ denied Mutter's claim. (R. at 20-27.) The ALJ found that Mutter met the nondisability insured status requirements of the Act for DIB purposes through the date of his decision. (R. at 27.) He further found that Mutter had not engaged in substantial gainful activity since May 30, 1997. (R. at 27.) The ALJ found that the medical evidence established that Mutter did not have a severe physical or mental impairment. (R. at 27.) Thus, the ALJ found that Mutter was not under a disability as defined by the Act and was not eligible for benefits at any time through the date of his decision. (R. at 27.) *See* 20 C.F.R. § 404.1520(c) (2006).

-13-

In her brief, Mutter argues that the ALJ erred by failing to find that she had a severe physical or mental impairment. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-26.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

The ALJ in this case found that Mutter did not have a severe physical or mental impairment. (R. at 27.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 406.1521(a) (2006). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 406.1521(b) (2006). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding that Mutter did not suffer from a severe physical impairment. In 2001, Dr. Weddington reported that her physical findings did not suggest that Mutter would be unable to perform manual labor. (R. at 318.) In February 2003, Dr. McConnell reported that his examination was normal. (R. at 382-83.) In July 2004, Mutter reported to Dr. Jewell that her medication was helpful, and she reported only mild lower back pain. (R. at 484.) The record does not show that any of Mutter's physicians placed any limitations on her work-related abilities.

Based on my review of the record, I do not find that substantial evidence exists to support the ALJ's finding that Mutter did not suffer from a severe mental impairment. It appears that the ALJ rejected Dr. Thompson's and Hughson's assessments as being inconsistent with their treatment notes. (R. at 24-26.) While the record does show that Mutter reported improvement of her symptoms with medication, (R. at 138, 141, 143, 289-92, 299, 300, 304, 306), the state agency psychologists found that she still had limitations on her work-related abilities. (R. at 321-35, 363-81.) In October 2001, Leizer, a state agency psychologist, reported that Mutter had moderate limitations in her ability to maintain concentration, persistence or pace. (R. at 331.) Leizer also found that Mutter had moderate limitations in her ability to understand, remember and carry out detailed instructions and to maintain attention and

concentration. (R. at 337-38.) In February 2003, Jennings, another state agency psychologist, found that Mutter had moderate limitations in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to set realistic goals or make plans independently of others. (R. at 363-67.) Jennings reported that Mutter could perform simple, unskilled, nonstressful work. (R. at 365.) However, the ALJ did not address these assessments. In addition, these limitations are consistent with those found by Dr. Patel in 2004. (R. at 458-60.)

While the ALJ is not bound to accept a medical source's opinion as to a claimant's residual functional capacity, he must consider any such opinion and explain what, if any, weight was given to it or why he chose to reject it. *See* 20 C.F.R. § 404.1527 (2006); *see also King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). In this case, the ALJ offers no explanation of his weighing of the medical evidence on this issue. Thus, I cannot find that substantial evidence exists in the record to support the ALJ's finding that Mutter did not suffer from a severe mental impairment.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

-16-

1. Substantial evidence exists to support the ALJ's finding with regard to Mutter's physical residual functional capacity;

2. Substantial evidence does not exist to support the ALJ's finding with regard to Mutter's mental residual functional capacity; and

3. Substantial evidence does not exist to support the ALJ's finding that Mutter was not disabled under the Act and was not entitled to benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Mutter's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying Mutter benefits and remand the case to the Commissioner for further consideration of Mutter's mental residual functional capacity and resulting ability to work.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de

-17-

novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 23rd day of February 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-18-